Good morning. May it please the Court, Carolyn Phillips appearing on behalf of the Appellant Petitioner, Christopher Young. The issues that have been certified by this Court is regarding whether or not Mr. Young's petition for habeas corpus was timely filed, specifically whether or not Mr. Young was entitled to statutory and GAAP tolling. The interesting part about this particular – I think if you pull the mic down just a little, there. The interesting thing about Mr. Young's particular chronology is that while he – his habeas petition was pending in State court, he actually filed a second petition between the first – and he did not actually abandon the issues that were filed in his first petition. And the second petition was a challenge to the credit for time served? Yes. While the cases seem to indicate that there is no GAAP tolling between two divergent habeas petitions, that would allow Mr. Young to have credit for or obtain statutory tolling from the time he filed the second petition through bringing up the issue he raised in his first petition having to do with IAC in February. I believe he filed it in February of 2005. Also, which I find very unusual, is that while Mr. Young actually filed his second petition having to do with credit – Counsel. Yes. So I understand your argument. Are you saying that you're not seeking statutory tolling predicated on the first petition? Oh, no. Actually, I – there is statutory tolling from the time that he filed his first petition. I believe what the case law indicates is that when you have two divergent petitions, between the first petition and the second petition, which I think was 75 days, that there may not be GAAP tolling in that instance. Okay. So you're saying that there may not be GAAP tolling for the time between the filing of the first and second petition. Exactly. But your argument is that the GAAP tolling began again when the second petition was filed. Yes. And it's tacked on to the time that the first petition was filed minus the GAAP between the first and second. Yes. So that's your argument. Yes. Petitioners are allowed one full round of consideration on a habeas petition. And a full round usually includes a decision by the California Supreme Court. Right. The difficulty is if you start on one path of argument and then you kind of abandon that and go on a second path of argument, I'm not sure it's clear that those are tacked together. Well, I don't believe, and I think the record would show that he did not actually abandon the argument that he raised in his first petition. He revisited it again when he filed his petition with both the District Court of Appeals and with the California Supreme Court on the same day, February 5th, 2005. But what petition was that in the process? Was that part of the second petition? No. That was actually the ineffective assistance of counsel for failure to file a notice of appeal. Well, if we don't give you credit or give him credit for the second time-served petition, am I correct that the clock started running on September 24 of 2004 when the Stanislaus County Superior Court denied his motion for reconsideration on the first habeas petition? And then there's a period of time until February 2 of 2005 when he petitions the District Court of Appeals and the California Supreme Court. Under 2244d1d, it's the petitioner's position that the factual predicate for his initial petition, which was based on the ineffective assistance of counsel and failing to file a notice of appeal, that the actual AEDPA statute didn't start to run until Mr. Young was apprised that his counsel was not filing a notice of appeal. And that would have been by letter January 15th of 2005. But how can you say the statute didn't begin to run when it already filed a petition before that asserting ineffective assistance of counsel for failure to file the appeal? No, Ashley. He filed his first notice of appeal. I'm sorry. The attorney's first habeas petition was filed August 16th. Right. 2004. 2004. I'm sorry. It's not 2005. January 15th, 2004. Oh, okay. I apologize. Oh, okay. That is when Mr. Young received communication from his lawyer that he was not going to be filing a notice of appeal on Mr. Young's behalf regarding his conviction in the Stanislaus Superior Court. It is at that point that petitioner asserts that the factual predicate for raising an issue of ineffective assistance of counsel for failing to file a notice of appeal, that that is when the actual ADPA statute started to run. So if you start with the January 15th date, between January 15th, 2004, and August 16th of 2004, you're saying that should be excluded from the statutory calculation? Well, that there's 212 days that actually passed between those two dates. So the 212 days then would be counted against the 365-day ADPA statute. He would have a remaining of 153 days left. So even if you took the period of time when he filed and the superior court considered and rendered a decision on his first petition filed in superior court and made a decision to deny the motion for reconsideration on September 23rd, from September 23rd, 2004, to December 7th, 2004, when Mr. Young filed his second petition again in the superior court, there was a 75 days that had passed. So even if you don't apply gap tolling to that, Mr. Young still has 77 days left in the statute in which to file his Federal petition. So what do we – I think I understand your argument, but what do we do with the fact that on September 16th of 2003, the ADPA clock starts to run because that is 60 days after the judgment was entered? And then, according to our chronology, on January 12th of 2004, Young mails his attorney a letter, at least bearing that postmark, so it might have been actually delivered to the prison earlier, but expressing his disappointment that he had not been told to file a notice of appeal. That's right. So is it January 12th or January 15th when he went? The January 15th letter from his attorney indicated that – stated that he – the attorney understood now that Mr. Young was trying to seek an appeal, but he wasn't going to be filing an appeal, and told Mr. Young that if he wished to file a notice of appeal, he had to first obtain a petition for a certificate of probable cause. Well, what did he say to his attorney on January 12th? I don't know. I'm confused. I'm afraid that I don't – I don't even know if we have that letter. I have a citation to an excerpt of record of 352 and 132. I don't know if that has that. That's correct, but I'm not sure if that letter was before – was the initiating letter that the attorney received on January 12th, or if it was a letter that followed after the – that January 15th letter. It's not dated, and I do not know. But in any case, 2244d1d – and 2244d1 indicates that we look at the latest date for triggering the AEDPA. Either it's when the judgment becomes final, or it's when the factual predicate is made known to the petitioner. And it's our position that that factual predicate was made known to the petitioner when he learned from his trial counsel that he was not filing a notice of appeal. Counsel, if we were to send this for a hearing, what would your client have to prove? Would he have to prove he didn't have adequate access to these materials during these periods? In having to prove in terms of when the AEDPA statute started to run, or – in order to initiate the AEDPA statute, in order for Mr. Young to show that he did not know the factual predicate that gave rise to his petition, he would have to show, and I think the record actually shows, that he was never advised, one, that he had a right to a notice of appeal. Neither the Court nor his counsel indicate on the record that Mr. Young had a right to an appeal. Well, that's the issue of getting to the point where we would give him a hearing. So, okay, we say we're going to do all this tolling, statutory, and we're going to remand for a hearing. So we remand for a hearing, and what would the issues be then? Well, I think, first of all, one of the issues would be whether or not Mr. Young had knowledge that his attorney had failed to – that, one, he had a right to a notice of appeal, and, two, that his attorney had failed to file a notice of appeal before the letter of January 15th. I think, secondly, between the two petitions that were overlapping each other, I don't think there's an issue. If we use the January 15th, 2004 date as the initiating date for the AADPA to begin, then Mr. Young's petition was timely filed in the Federal Court. It was actually filed on December 5th, 2005. The two separate petitions were not completed or decided by the California Supreme Court until December 21st, 2005, actually, 16 days after Mr. Young had signed his Federal petition. Okay. I think we need to hear from the State.  Thank you.  Mr. Stewart. Good morning, Your Honors. David Andrew Aldrich, Deputy Attorney General for Respondent. As to the point raised, rather, one petition should be tacked on to another, the simple fact is there are different timelines which can start under AEDPA. One goes to the entire petition, and it starts with the date the judgment becomes final. Another, for example, goes based on the date you discover facts. They can commence differently. They can also be told differently. So they can't just be mapped one to the other. For example, if you're relying on D1D, which goes to when you discover the facts, then the petitions which you think should toll later, providing gap tolling, have to raise the same claim. The default limitation period, which goes just from the judgment, will really be told by anything challenging the underlying judgment, whether or not it's the same claim. But it isn't a matter of just adding up. Rather, and this is why I don't the analysis doesn't go with here's when it started, here's one year later, and let's start subtracting in terms of tolling. Rather, the cleaner approach simply is when does it start, when does it stop, and if it runs out before you've filed your federal petition, that's the end of it. All right, counsel, how do you apply your theory to the facts of this particular case? So in your view, when did the statute start running and why, and when did it stop and why? As we've stated in the brief, there are actually two possible commencement dates. One goes to the petition itself, no matter what claims are in it. And that one starts based on when. So what date is that? From your reading of the record, what date is the petition in your view?  The first petition? Yes. The limitation period, day one, would be the 61st day after July 18, 2003. So the judgment came final on September 16. 2003. 2003. Okay. The following day is day one. Okay. And how long did it run? But I want to make clear, that is the limitation period under D-1A. It goes through the entire petition. Okay. Because it's possible, based on his assertions that he says he found out something later, the one under D-1D may be different. Okay. We're asking, I'm asking for your viewpoint. I don't, I understand what the petition is saying, but I'm asking you, according to your calculations. I understand. So you're saying the statute began to run on September 16, 2003. The limitation period under D-1A did. Right. Okay. And so when did it stop running, if it stopped? It's, well, it, there is a petition that bears a signature date of August 16, 2004. So August 15 would be when we'd say it stopped. Okay. And he, we have a petition which was denied on September 2. He says that he should get tolling for a rehearing. It doesn't actually matter in this case because it ends up being only about 20 days, but the fact is he has the burden of showing that would be a proper filing under state law. And, in fact, there is no such thing as a rehearing of a hate petition under state law. I don't think it's critical for this case, but I definitely don't want there to be any sort of indication that we're conceding that would have been included. Okay. For purposes of this case, then, if the date is the September 24, 2004 day? If it is September 24, then you have to add about 20 days from the date I said in the brief, which would be about October 24. So at that point, how many days were remaining according to your calculation? I'm sorry. I'm sorry. I just gave you the end date. Sorry. If we go from the 24th, then no matter what, whenever it started again, there were 30, about 33 days left. There were 33 days left? Yes, because day 334, sorry, 32 days, day 334 of the statute elapsed on August 15. So no matter what, 32 days left on D1A. Okay. So it's your view that the second petition had no effect at all on the running of the statute? That's correct. It was filed right. So your viewpoint is that 32 or 33 days after September 24, 2004, was the drop-dead day for a habeas petition, a timely file in federal court? Well, yes, under D1A. Right. Why do you keep saying D1A? Because as we acknowledge in the petition, in light of the nature of the claim, it is possible that there was a later one, a later limitation period, which started under D1D. I don't think it's credible, but we had to acknowledge the possibility. If he claims that he didn't know the factual predicate of his claims on the date the conviction became final, but rather he only found out, for example, in fact, for example, if your claim is he didn't file a notice of appeal within 60 days, it's very possible you don't know that on the 60th day. You would know it later. Okay. So if that argument is given credence, how would your timeline be adjusted? Well, then it becomes ‑‑ it starts on a different date. I'll direct you to page 10 of the brief, which is where that begins. But no later than January 12 is actually when he knew, although his letter is dated January 15, but his letter from the attorney points out the postmarks even before that. So he has a misdated letter. If we use the January 12 date as the starting date? Yes. Then you have ‑‑ if January 13 is day one, then 215 days elapse additional days as of August 15, because, again, August 16 is the first petition. Right. If we go again to September 24, as when the clock starts running again, he has 149 days left. And he does not file. But you were saying that's the February 10, 2005 date. As of that date, he had 149. I think we end up with ‑‑ That was the reconsideration date, which was September 24, 2004. Right. If we're allowing for that, then we have a clock that starts on September 25. Okay. 149 days from then. I'm good at math, but I'm not that good yet. We would end up with 21 days after January 30 of 2005, which is February 20. So February 20 would be the date it elapsed, of 2005. 2005. Yes. Okay. And he filed in December 2005. Right. And nothing counts during that time, because while he filed another Superior Court petition, and, in fact, a district court petition between that time, they did not raise that claim again. They were concerned only with parole. And since D1D is only told by things challenging the same claim, you don't get tolling. Right. So according to your argument, the only way the petition could be timely is if the second petition is considered part of the statutory tolling rubric. Under D1D, yes. Right. By the way, we don't concede that actually his statements were true and that that was the latest date he found out, but even assuming that. I understand. I was just trying to understand your argument. I don't know if you really want an argument on this particular point, but to the extent there was a claim that in the reply brief that somehow this court should take into account any difficulties he had filing between denial of the first and I think petition number three or four, the simple fact is he wasn't disabled because he was filing documents. He just wasn't filing documents as to this claim. So my time is just about up. All right. Thank you, Your Honor. Thank you very much. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson